**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**DWAYNE C.,**

      **Plaintiff,**

**vs.**                                                                                   **CIVIL ACTION NO. 2:22-CV-00401**

**KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Order entered September 23, 2022 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in Support of Complaint (ECF No. 14) and the Defendant's Brief in Support of Defendant's Decision (ECF No. 17).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** the Plaintiff's request for remand (ECF No. 14), **DENY** the Defendant's request to affirm the final decision (ECF No. 17); **REVERSE** the final decision of the Acting Commissioner; and **REMAND** this matter back to the Acting Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings for the reasons stated *infra*:

1

**Procedural History**

The Plaintiff protectively filed his application for SSI on August 21, 2019 alleging disability beginning October 31, 2016 because of PTSD, anxiety, schizophrenia, "delusional, paranoia, anti-social behavior", a left thumb amputation, arthritis, bilateral knee surgery, left arm and back problems, as well as stomach and right hip problems, diverticulitis, and head trauma. (Tr. at 10, 226-234, 259) His claim was initially denied on July 15, 2020 (Tr. at 77-94) and again upon reconsideration on December 10, 2020 (Tr. at 96-120). Thereafter, he filed a written request for hearing on January 14, 2021 (Tr. at 147-149).

An administrative hearing was held on March 8, 2022 before the Honorable Francine A. Seraphin, Administrative Law Judge ("ALJ"). (Tr. at 33-54) On May 2, 2022, the ALJ entered an unfavorable decision. (Tr. at 7-31) On May 20, 2022, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 221-223) The ALJ's decision became the final decision of the Commissioner on July 29, 2022 when the Appeals Council denied the Plaintiff's Request for Review. (Tr. at 1-6)

On September 21, 2022, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 10) Subsequently, the Plaintiff filed his Brief in Support of Complaint (ECF No. 14), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 17), and finally, the Plaintiff filed his Reply Brief reiterating his arguments in support of remand (ECF No. 18). Consequently, this matter is fully briefed and ready for resolution.

**The Plaintiff's Background**

The Plaintiff was 50 years old as of the application filing date, defined as a "person closely approaching advanced age" during the underlying proceedings. See 20 C.F.R. § 416.963(d). (Tr. at 25) He has a high school education, and last worked as a short order cook/driver for a restaurant (Tr. at 260, 261).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 416.920a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 416.920a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that the Plaintiff satisfied the first inquiry because he had not engaged in substantial gainful activity since August 21, 2019, the application filing date. (Tr. at 12, Finding No. 1) Under the second inquiry, the ALJ found that the Plaintiff has the following severe impairments: osteoarthritis; status post right knee meniscus tear, status post right knee arthroplasty; history of left knee surgery; degenerative changes of the lumbar spine; carpal tunnel syndrome (CTS) of the left upper extremity; amputated thumb of dominant left upper extremity; obesity; bipolar disorder; and antisocial personality disorder. (Id., Finding No. 2) At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14, Finding No. 3) The ALJ then found that the Plaintiff has the residual functional capacity ("RFC") to perform light work, except:

> the claimant can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl. He is limited to frequent gross and fine manipulation with the left upper extremity. He is capable of tolerating occasional exposure to extreme cold, extreme heat, and vibration. He must avoid all workplace hazards such as moving machinery or unprotected heights. He is capable of learning, remembering and performing work activity or tasks that are not at an assembly line or production rate pace or involving any strict production quotas. He is capable of tolerating occasional contact with supervisors, coworkers and the public.

(Tr. at 17, Finding No. 4)

At step four, the ALJ found that the Plaintiff is unable to perform any past relevant work. (Tr. at 24, Finding No. 5) However, at step five, the ALJ found that based on his age, education, work experience and RFC, the Plaintiff is capable of performing other jobs in the national

economy. (Tr. at 25, Finding Nos. 6-9) Finally, the ALJ determined the Plaintiff has not been under

a disability since August 21, 2019. (Tr. at 26, Finding No. 10)

**The Plaintiff's Challenges to the Commissioner's Decision**

      The Plaintiff alleges that the ALJ's RFC assessment is flawed because she failed to explain

why she did not adopt some portions of the State agency psychological consultants' opinions, but

did adopt others as to the Plaintiff's mental limitations; in this case, the while the ALJ found these

opinions persuasive, and did limit the Plaintiff to only "occasional" contact, she did not include

their opined limitation that the Plaintiff be further restricted to "superficial" contact. (ECF No. 14

at 2-5) The Plaintiff contends that there is a difference between the quantity of contact and the

quality of contact that was ignored by the ALJ, and this omission, without any explanation, is error.

(Id. at 5-6)

      The Plaintiff also argues that the RFC has no accommodation for a cane, and that the ALJ

failed to even acknowledge that he was prescribed a cane, despite the record supporting his need

for one when standing and walking, although he could go very short distances without one. (Id. at

7-8, 9) The Plaintiff points out that this error is not harmless, because the light work restriction

requires a person to walk or stand most of the day (about six hours out of eight) and to use his

hands to grasp, hold, and turn objects. (Id. at 8-9) As a practical matter, the light work RFC is

incompatible with the Plaintiff's cane use; even if the Plaintiff's cane use can be accommodated

by a sedentary work restriction, as a result, the application of the pertinent grid rule directs a

finding that the Plaintiff is disabled. (Id. at 9) The Plaintiff asserts that the ALJ did not comply

with SSR 96-9p because she did not consider the particular facts in this case to make a finding as

to whether the cane was medically required in assessing the RFC, but only relied upon her lay

opinion. (Id. at 10-12)

Further, the Plaintiff argues that the ALJ did not reasonably discount the medical opinion of Ryan Morrison, M.D., despite being consistent with the evidence. (Id. at 15-17) Finally, the Plaintiff states that his self-described limitations are also consistent with the evidence, and the ALJ did not reasonably find to the contrary, particularly with regard to her assessment of the other evidence of record: the ALJ's analysis of the Plaintiff's daily activities, location, duration, frequency and intensity of his pain as well as precipitating and aggravating factors, including medication, treatment and other measures were based on the objective evidence, which is contrary to this Circuit's jurisprudence and legal standards. (Id. at 17-20) To correct all these errors, the Plaintiff asks this Court to remand this case. (Id. at 20)

In response, the Commissioner states that the ALJ appropriately evaluated the Plaintiff's subjective complaints in compliance with legal standards when assessing his RFC, including the Plaintiff's self-described limitations against the entire record, which included the objective evidence. (ECF No. 17 at 10-12) The ALJ did not require objective evidence to support the Plaintiff's allegations, it was considered as part of her analysis against the entire record. (Id. at 12) Regarding his cane use, the Commissioner points out that while the medical record showed that the Plaintiff had been prescribed a cane for his knee pain, it did not describe the circumstances for why it was prescribed. (Id. at 12-13) Further, although pertinent case law does not require an ALJ to address every piece of evidence from the record, she did note that medical records indicated knee pain and that he may use a cane as needed, but that the Plaintiff also experienced improvement in his symptoms from treatment and medications or exhibited mild findings – all of which showed that the Plaintiff's cane use was not medically necessary. (Id. at 13-15) The ALJ's analysis of the

evidence was well reasoned and did not suggest the Plaintiff was more functionally limited; in short, the Plaintiff essentially asks this Court to reweigh the evidence to arrive at a different conclusion. (Id. at 15-16)

Regarding the ALJ's analysis of the medical opinion evidence, under the pertinent Regulations, the ALJ was not bound by any medical opinion or prior administrative medical finding when determining the RFC. (Id. at 16) As for the Plaintiff's mental health restrictions, the ALJ complied with Fourth Circuit jurisprudence when evaluating the evidence, noting the evidence that supported her conclusion that the Plaintiff was moderately limited in interacting with others. (Id. at 16-17) While the ALJ limited the Plaintiff to occasional interactions with others, and did not include that he also be limited to "superficial" interactions with others, the ALJ did not have to adopt this medical opinion in its entirety, and even if she had, it is of no moment, because the psychological consultants' opinions nevertheless found that the Plaintiff was not disabled. (Id. at 17-19) Regarding Dr. Morrison's opinion that the Plaintiff must use a cane, contrary to the Plaintiff's argument, the ALJ did acknowledge this medical opinion, along with the relevant medical records to explain why she found his opinion not persuasive. (Id. at 19)

In addition to considering the medical opinion evidence, the ALJ also discussed the Plaintiff's daily activities, along with his lack of treatment, against the overall record when determining his RFC; the Plaintiff fails to identify any material evidence or conflicts the ALJ's analysis did not address that would have changed the RFC assessment. (Id. at 19-20) Since the RFC assessment is solely within the province of an ALJ, who in this case considered all the relevant medical and other evidence of record, and explained her reasons behind her conclusions, the RFC should not be disturbed. (Id. at 20) The Commissioner argues the final decision is

supported by substantial evidence and asks this Court to affirm. (Id.)

In reply, the Plaintiff points out that the Commissioner failed to address the distinction between quality and quantity of interactions, notwithstanding the ALJ's finding the restrictions on the Plaintiff's interactions with others persuasive, yet failing to include "superficial" contact; the Commissioner also fails to address the Plaintiff's earlier argument that pertinent Rulings maintain that appropriate interactions with coworkers and supervisors is necessary to maintain employment, and what effect the omission of this restriction would have had on the VE's testimony. (ECF No. 18 at 1-3) Further, the Plaintiff reiterates his argument that the ALJ failed appropriately consider his treating physician's opinions concerning his cane use. (Id. at 3-5) Finally, the Plaintiff again contends that the ALJ did not properly address his significant standing and walking limitations due to his knee issues by highlighting the objective findings and treatment records were inconsistent with his subjective complaints, contrary to Fourth Circuit jurisprudence. (Id. at 5-6)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

The Medical Records Concerning Knee Impairments:

The Plaintiff reported undergoing left knee arthroscopic surgery in 1991 that relieved his pain until December 2014 when he fell, resulting in symptoms that included pain, swelling, and feelings of instability (Tr. at 18, 353). In August 2019, the Plaintiff told his primary care provider,

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As acknowledged by the parties, the pertinent medical evidence of record in this appeal concerns the treatment for the Plaintiff's physical impairments, specifically dealing with his knee problems, along with the associated symptoms, including, but not limited to, his pain.

Amy Tickle, M.D., that he was trying to get disability because he could not stand on his feet for too long secondary to pain (Tr. at 473). However, at that time, Dr. Tickle observed that he had a normal gait and station (Tr. at 474). Nonetheless, given the Plaintiff's reports of left knee pain, on October 8, 2019, Dr. Tickle ordered x-rays (Tr. at 575). Although the three views of the Plaintiff's left knee showed that his joint spaces were within normal limits for his age and there was no evidence of acute fracture, subluxation, or joint effusion (Id.), Dr. Tickle prescribed him a cane that same day (Tr. at 632), and one month later, given his complaints of instability, she prescribed a left knee brace (Tr. at 18, 634).

On January 20, 2020, the Plaintiff presented for an orthopedic appointment with John P. Pierson, M.D. (Tr. at 515). He reported bilateral knee pain that was greater on his left side and instability (Id.). While Dr. Pierson noted that the Plaintiff ambulated with an antalgic gait, he observed that the Plaintiff was able to ambulate unassisted (Tr. at 18, 515-516). Subsequently, in January and February 2020, the Plaintiff presented to the emergency department for reasons unrelated to his orthopedic complaints[2] (Tr. at 606). The hospital providers noted that the Plaintiff maintained full active and passive range of motion bilaterally (Tr. at 606), and he exhibited a stable gait with no evidence of ataxia (Tr. at 549). During the latter visit to the hospital, the Plaintiff denied experiencing joint pain or decreased range of motion (Tr. at 548).

In February and June 2020, the Plaintiff continued to report experiencing knee pain during his visits with Dr. Pierson (Tr. at 528, 531). Dr. Pierson ordered an MRI of the Plaintiff's left knee that showed findings consistent with moderate to severe ending and arthritis of the medial compartment of the left knee with extrusion of the medial meniscus (Tr. at 19, 529). The physician

---

[2] The Plaintiff presented to the emergency department for flu-like symptoms. (Tr. at 605-608)

also noted that the Plaintiff ambulated with an antalgic gait during these two appointments and diagnosed him with left knee osteoarthritis (Tr. at 529, 532-533).

On July 10, 2020, the Plaintiff presented for a consultative medical examination with Laura Cunnings, FNP-C (Tr. at 19, 535). During that visit, the Plaintiff reported experiencing knee pain, and he wore an over-the-counter knee brace (Tr. at 19, 534-535). Upon examination, he could not walk on his heels, he had difficulty squatting, and he exhibited limited flexion in his left knee with the ability to extend to 125 degrees with pain (Tr. at 19, 536-537). However, Nurse Practitioner Cunnings noted that the Plaintiff ambulated with a normal gait, his posture was straight, and he was able to walk on his toes, as well as perform a tandem gait (Tr. at 19, 535-536). Additionally, despite his limitations with flexion in his left knee, the Plaintiff exhibited full range of motion with flexion and extension in his right knee and he maintained 5/5 lower extremity strength bilaterally (Tr. at 19, 537).

Several months later, in December 2020, the Plaintiff attended a 14-minute telephonic visit with Dr. Tickle where he reported that he was receiving online physical therapy for his left knee, but he did not feel that it was effective and wanted to return see Dr. Pierson because he felt his left knee was unstable (Tr. at 18, 617). These physical therapy records are not in evidence, and there are no records showing the Plaintiff received additional therapy for his left knee.

The Plaintiff reported that the pain in his left knee was worse than his right, but when he saw Dr. Tickle on April 6, 2021, he reported that he would be having surgery on his right knee for a meniscus tear and arthritis (Tr. at 19, 655, 658). Later that month, on April 28, 2021, the Plaintiff underwent a right knee arthroscopy with partial meniscectomy (Tr. at 19, 666). Less than three weeks later, he told Dr. Pierson that the throbbing pain had resolved, though he did report having

12

some pain, tenderness, and increased pain when walking up and down inclines, including an audible clicking noise with walking down stairs (Tr. at 19, 673). Later, at his six-week post-operative visit, the Plaintiff reported that while playing with his grandchildren, his right knee gave out (Tr. at 667). Dr. Pierson administered a right knee cortisone steroid injection and told the Plaintiff that he could advance to weight bearing activities as tolerated (Tr. at 668). Dr. Pierson instructed the Plaintiff that he could use an assistive device as needed, but he recommended that he maintain an active lifestyle (Id.).

Several months later, in August and September 2021, the Plaintiff presented to the emergency department for COVID like symptoms and complaints related to "bad marijuana," respectively (Tr. at 689, 696). The provider at the initial visit observed that he had full active and passive range of motion bilaterally (Tr. at 689). At the September visit, while the Plaintiff wore a brace on his right knee, the provider indicated that his extremities were nontender to palpation, there was no evidence of gross deformity, edema, or swelling, and he maintained a stable gait without ataxia (Tr. at 696).

The Plaintiff did not return for a follow-up visit with Dr. Pierson until February 3, 2022, approximately eight months after he last saw the orthopedic doctor (Tr. at 15, 765)). He told Dr. Pierson that he had been using a brace and cane for stability (Tr. at 19, 767). The physician indicated that the Plaintiff was a candidate for a total knee arthroplasty and the recovery would take up to six months (Tr. at 15, 19, 768).

Treating Physician Opinion Evidence:

On March 3, 2022, the Plaintiff's treating physician, Ryan Morrison, M.D., completed a "Physical Residual Functional Capacity Questionnaire" (Tr. at 24, 774-779). Dr. Morrison opined

that the Plaintiff's pain or other symptoms would frequently interfere with his attention and concentration needed to perform even simple work tasks during a typical workday (Tr. at 775). He also opined that the Plaintiff was incapable of "even 'low stress' jobs" because "physical and emotional stress is overwhelming" (Id.). Dr. Morrison determined that the Plaintiff could sit, stand, and walk less than two hours in an eight-hour workday, and that he would require being able to walk throughout the workday more than seven times, for approximately 1-5 minutes each time (Tr. at 776). Additionally, Dr. Morrison determined that the Plaintiff would need to be able to shift positions, from sitting, standing, or walking throughout the workday, more than seven times, for about 11-15 minutes each time (Tr. at 777). He indicated that the Plaintiff would need to elevate his legs at heart level for prolonged sitting, for about 2-4 hours if in a sedentary job (Id.). Dr. Morrison indicated that the Plaintiff can walk without a cane or other assistive device for a "very short range" (Id.). He opined that the Plaintiff can lift and carry ten pounds rarely and occasionally (Id.). Dr. Morrison estimated that the Plaintiff's impairments would cause him to be absent from work more than four days per month, and opined that the Plaintiff is unable to work at any level of exertion (Tr. at 778-779).

Mental Health Treatment:

The record showed that the Plaintiff's mental health records predate the relevant period in this application, and that he reported two hospitalizations after his mental health symptoms were exacerbated by his substance abuse (Tr. at 20, 360, 501). During the period at issue, child protective services referred the Plaintiff for mandatory intensive outpatient substance abuse, and on August 27, 2019, he presented for a psychosocial evaluation (Tr. at 365). At the conclusion of the examination, Yvonne Hargrow, MS, LPC diagnosed him with generalized anxiety disorder,

antisocial personality disorder, and severe opioid and cannabis use disorder (Tr. at 21, 372). The therapist recommended that he receive individual therapy (Tr. at 373).

Prior Administrative Medical Findings:

The State Agency medical consultant, Narendra Parikshak, M.D., reviewed the available records in July 2020 and assessed that the Plaintiff can lift 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours and sit 6 hours in an 8-hour workday; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; frequently finger and feel; and avoid concentrated exposure to extreme cold, extreme heat, wetness, and vibration; and avoid even moderate exposure to hazards such as machinery and heights. (Tr. at 88-90) This assessment was affirmed upon reconsideration in December 2020 by Palle Reddy, M.D. (Tr. at 110-113)

Prior Administrative Psychological Findings:

The State Agency psychological consultant, Holly Cloonan, Ph.D., reviewed the available records in March 2020 and determined that the Plaintiff had mild limitations in understanding, remembering or applying information and in adapting or managing oneself, but moderate limitations in interacting with others and concentrating, persisting or maintaining pace (Tr. at 85). Additionally, it was determined that the Plaintiff is able to learn, remember and perform work-like activities in settings that do not require meeting production line schedules and in situations with no more than occasional and superficial interactions with others (Tr. at 91). This assessment was affirmed upon reconsideration in December 2020 (Tr. at 106-107, 116).

The Plaintiff's Self-Described Limitations:

In the September 2019 "Function Report" he completed in connection with his initial claim

for benefits, the Plaintiff reported that he has a hard time staying on his feet for too long. (Tr. at 268) He reported that it "takes [him] a lot more time" to dress, and putting on his socks and shoes is "very hard." (Tr. at 269) The Plaintiff indicated that his conditions affect lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing. (Tr. at 273) He reported that he can walk for about 40-50 steps before needing to stop and rest. (Id.) In the October 2020 Function Report he completed at the reconsideration level, the Plaintiff reported that he can walk for about 4-5 minutes and that he uses a cane, along with other aids[3], 80% of the time. (Tr. at 299-300)

**The Administrative Hearing:**

The Plaintiff's Testimony:

The Plaintiff testified that his "arthritis has gotten a lot worse" over the last several years and that he has a hard time walking and standing up. (Tr. at 38) He stated that he was supposed to get a right knee replacement first, and then his left knee, because "both of them are [] severely damaged, they're bone-to-bone." (Id.) Due to problems with his hands, he estimated that he could probably lift ten pounds at one time, "but that would maybe [be] once" and "[m]aybe with both arms." (Tr. at 40)

The Plaintiff confirmed that he was prescribed a cane and that he uses it for the "majority of a day", but he sometimes will not use it when getting out of the car and if there is a short walk to the entrance, then he "may try to use [his] physical strength." (Tr. at 45) He needs to use his cane when going up and down stairs because he does not feel very stable, and he endorsed having balance issues even when standing still. (Id.) He has also fallen while using his cane. (Tr. at 46)

---

[3] The Plaintiff reported that in addition to being prescribed a cane, he is also prescribed a brace/splint for his left wrist as well as glasses/contact lenses. (Tr. at 300)

<u>The Vocational Expert's (VE) Testimony:</u>

In response to the ALJ's hypothetical individual of the Plaintiff's age, education, and work background, with the controlling RFC, the VE testified that the individual could not perform his past relevant work, but could perform other light exertional jobs, including clerical checker, inspector, and non-postal mail clerk. (Tr. at 50-52) The VE testified that being off task more than 15% of the time would preclude all work. (Tr. at 52)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**Analysis**

As noted *supra*, the Plaintiff takes issue with the ALJ's treatment of not only the opinions provided by the State Agency psychological consultants, but also that of Dr. Morrison, arguing that the ALJ did not adopt the additional limitations set forth in the opinion evidence into the RFC assessment without explaining why.

As noted by the parties, the ALJ explicitly applied the regulatory framework pursuant to Section 416.920c to claims filed after March 27, 2017 concerning medical opinions and prior administrative medical findings. (Tr. at 17, 22) Here, the ALJ properly applied the pertinent legal standard, which emphasizes the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record. Instead of assigning weight to medical opinions, the ALJ now just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). 20 C.F.R. § 416.920c(b). Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. When discussing her finding about whether an opinion is persuasive, the ALJ need only explain how she considered the "the most important factors" of supportability and consistency. Id. § 416.920c(c). The ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id § 416.920c(b)(2)-(3).

As an additional matter, an RFC assessment lies squarely with the ALJ, and not with any medical provider/examiner. 20 C.F.R. § 416.946(c); see Felton-Miller v. Astrue, 459 Fed. App'x 226, 230-31 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC.").

Regarding the State Agency psychological opinions, both opined that the Plaintiff can work

with occasional contact with supervisors, coworkers and the public, but they also determined that this contact be "superficial." The ALJ found their opinions "persuasive", and acknowledged that they found the Plaintiff's mental impairments – anxiety, personality, depressive, and trauma related disorders severe, although the ALJ found the generalized anxiety and post-traumatic stress disorders to be nonsevere. (Tr. at 23) The ALJ also found their opinions were supported by the record, and consistent with the longitudinal record. (Id.) Additionally, the ALJ explained that the consultative examination, the Plaintiff's self-reported activities of daily living, his performance within mental health treatment records and general medical records, his "lack of psychotropic medication management", in addition to "his long period without mental health treatment without increased symptomology" also supported her assessment of the State Agency psychological opinions. (Id.)

While the ALJ found this opinion evidence "persuasive", and did limit the Plaintiff to only "occasional" contact with coworkers, supervisors and the public, she did not adopt the additional criterion that his contact be "superficial." The undersigned observes that while the Commissioner is correct that an ALJ need not adopt every aspect of a medical opinion when crafting an RFC assessment, the Plaintiff contends that the failure to explain why the "superficial" contact was omitted from the RFC limitation renders the ALJ's finding that the opinions "persuasive" suspect. As the Plaintiff points out, there does not appear to be any cases addressing this specific issue within this Circuit, however, other courts[4] have recognized that there is a significant distinction between "occasional" contact, which concerns the *quantity* of contact, versus "superficial" contact, which

---

[4] Citing Corey v. Comm'r of Soc. Sec., 2019 WL 3226945 (S.D. Ohio Jul. 17, 2019); Lindsey v. Comm'r Soc. Sec., 2018 WL 6257432 (S.D. Ohio 2018); Watson v. Kijakazi, 2022 WL 325586 (W.D. Wis. Feb. 3, 2022); Vargas v. Kijakazi, 2021 WL 5300070 (D.N.M. Nov. 21, 2021); Miller v. Kijakazi, 2021 WL 4311811 (E.D. Okla. Sept. 22, 2022).

concerns the "*quality*" of contact; the ALJ's failure to include the "superficial" limitation in the

RFC determination does not accommodate the limitations caused by the Plaintiff's mental

impairments (See ECF No. 14 at 5, fn 3)(*italics* in original). Notably, some of the cases cited by the

Plaintiff concern claims filed prior to March 27, 2017, thus the evaluation of the opinion evidence

was applied under a standard no longer recognized in the case at bar; the Commissioner observed

that notwithstanding the additional "superficial" contact limitation, the State Agency consultants

still opined the Plaintiff was not disabled. Nevertheless, the undersigned is not convinced the ALJ

satisfied her burden at the fifth step of the sequential evaluation process. Indeed, while at both the

initial and reconsideration levels of review, the Plaintiff was deemed capable of performing certain

light work jobs (See Tr. at 93, 118), these findings were not given the benefit of having a vocational

expert's consideration or expertise, which would enable the ALJ to satisfy her burden at the final

step  in her analysis:

> The Fourth Circuit has held "Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert ..." Pearson v. Colvin, 810 F.3d 204, 211 (4th Cir. 2015). The duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts. Radford v. Colvin, 734 F.3d 288, 296 (4th Cir. 2013); see also Brown v. Colvin, 639 Fed. App'x. 921, 923, 2016 WL 50298, at *2 (4th Cir. Feb. 9, 2016) ("We remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review"). And, as the Fourth Circuit has repeatedly made clear, the ALJ must provide a sufficient explanation of his findings to allow for meaningful appellate review. See Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015)("Because we are left to guess about how the ALJ arrived at his conclusion on [Plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."); Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (holding that without an adequate explanation, "it is simply impossible to tell whether there was substantial evidence to support the determination").

See Cunningham v. Berryhill, No. 3:16-cv-02525, 2017 WL 1259587 (S.D.W. Va. Mar. 31, 2017)

(Tinsley, M.J.).

The undersigned further finds persuasive a court's finding that "[e]ven a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions", which gives one pause as to whether the ALJ built a logical bridge between the record evidence and the determination that the Plaintiff did not require any limitation as to the quality of his interactions, at least with supervisors. See, Greene v. Saul, 2020 WL 4593331, at *4 (N.D. Ind. Aug. 11, 2020) (internal citation and quotation marks omitted). Therefore, as it relates to the Plaintiff's mental impairments, the undersigned is unable to find that the RFC assessment and the subsequent steps in the evaluation process are supported by substantial evidence. Without the ALJ's full consideration of the State Agency psychological opinion evidence, the RFC assessment as it stands does not contain the required narrative discussion that allows for meaningful judicial review. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016).

Regarding Dr. Morrison's opinion, the ALJ determined it was not persuasive, because his "summary of the claimant's impairments and some symptomology resulting therefrom" was inconsistent with the treatment records from his primary care physician's noting the "degree and consistency of the reported symptoms." (Tr. at 24, 613-634, 650-664)[5] The ALJ also found Dr. Morrison's RFC assessment was not adequately supported to the extent he opined the Plaintiff was unable to perform "even low stress jobs" because his "physical and emotion[al] stress is 'overwhelming' " (Tr. at 24, 775), as this was inconsistent with "the claimant's discontinuation of mental health treatment without increased symptomology, objective psychological findings within various records, and his activities of daily living." (Tr. at 24) The ALJ provided some examples of

---

[5] These records are from Amy Tickle, M.D., of the Cabin Creek Health Center, dated October 8, 2019 through December 29, 2020 and March 28, 2021 through April 14, 2021, respectively. The Plaintiff testified that Dr. Tickle "passed everything over" to Dr. Morrison when she left for a different facility. (Tr. at 43)

the Plaintiff's activities, including "shopping in stores, weed eating, performing household chores, and playing with his grandchildren" as being inconsistent with Dr. Morrison's opinion that he was able to stand for only two minutes at a time (Tr. at 24, 776). Additionally, the ALJ noted that Dr. Morrison's opinion "lacks adequate objective or analytical support and is inconsistent with the record." (Tr. at 24)

While the ALJ did not discuss Dr. Morrison's opinion as it related to the Plaintiff's need for a cane, throughout the written decision, she mentions the Plaintiff's use of one: at the third step of the sequential evaluation process, she recognized the record shows that the Plaintiff experiences pain, stiffness, abnormal motion or instability of the joints, particularly as those symptoms relate to his osteoarthritis and other impairments of the Plaintiff's knees. (Tr. at 15, 510, 516, 575, 768) She then found that the Plaintiff "does not have a documented medical need for an assistive device . . ." pursuant to multiple physical examinations within the record and the consultative examination (Tr. at 15, 508-533, 534-540, 635-649, 737-755, 756-772).[6] The ALJ acknowledged the Plaintiff's testimony that he required the use of a cane and brace, but also recognized that his providers advised him to "lose weight and maintain an active lifestyle." (Tr. at 18, 668)[7] Additionally, a January 2020 examination showed that the Plaintiff had minimal tenderness, moderate patella crepitation, quad atrophy, effusion, and decreased range of motion, yet the Plaintiff ambulated without assistance (Tr. at 18, 515-518). Despite being provided a hinged knee brace to address the Plaintiff's complaints of instability, an examination revealed no valgus or varus (Tr. at 18-19, 637). The ALJ

---

[6] Here, the ALJ referenced numerous medical records primarily from West Virginia OrthoNeuro, where the Plaintiff was followed by John P. Pierson, M.D. and the consultative evaluation report provided by Laura Cunnings, FNP-C.

[7] This treatment note is from Dr. Pierson, dated June 24, 2021, and further provides that despite the Plaintiff's osteoarthritis of the right knee diagnosis, he is recommended to use anti-inflammatories, low impact exercise, and activity modifications to help control discomfort, and that "[h]e may use an assistive device as needed." (Tr. at 668)

then acknowledged that during the consultative examination, the Plaintiff was observed ambulating with a normal gait, having no atrophy, able to walk on his toes, perform a tandem gait, though not able to walk on his heels or squat, yet having normal bilateral lower extremity strength and 125/150 degrees of range of motion in the left knee (Tr. at 19, 534-540). From a treatment record in April 2021, the ALJ noted the Plaintiff was documented ambulating with a cane due to knee pain, and although the Plaintiff reported his "throbbing" knee pain resolved, he still presented to the emergency room in June because of "increased right knee pain, catching, and locking (Tr. at 19, 699). By February 2022, the Plaintiff was observed to walk with a cane and a brace for stability (Tr. at 19, 742), and deemed to be a candidate for a total knee arthroplasty due to his osteoarthritis (Tr. at 19, 768).[8] The ALJ then considered the Plaintiff's cane use pursuant to SSR 96-9p, finding that "[t]he claimant's variable performance within the record and gaps in treatment do not support the medical necessity of using a cane in this case . . . ." (Tr. at 19)

> This Ruling provides further guidance when the issue of hand-held assistive devices arises:
>
> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

See, *Titles II and XVI: Determining Capability to do Other Work--Implications of a Residual Functional Capacity For Less Than a Full Range of Sedentary Work*, SSR 96-9p, 1996 WL 374185, at *7. (**bold** in original) As noted *supra*, Dr. Morrison indicated that the Plaintiff must use a cane, although "he can sometimes do very short range without device" (Tr. at 777). The

---

[8] From the latter citation to the record, Dr. Pierson indicated that despite the Plaintiff's "advanced arthritic degeneration of the knee", "[c]onservative management options including activity modification, assistive devices, anti-inflammatories, and injections have failed to provide consistent relief." (Tr. at 768)

undersigned finds that this assessment aligns with the Ruling's requirement of "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Thus, to the extent that the ALJ found there was no medical necessity for an assistive device, she should have explicitly mentioned this portion of Dr. Morrison's opinion, given that the Plaintiff's cane use triggered her analysis under SSR 96-9p.

While the undersigned can appreciate that the ALJ's review of the record concerning the Plaintiff's left knee "suggests improvement or lack of further deterioration of the left knee" (Tr. at 19), there appears to be no dispute that the Plaintiff's right knee deteriorated over the relevant period, to the point that in February 2022, one month before the administrative hearing, he was deemed a candidate for a total knee arthroplasty (Tr. at 19, 768). Indeed, the Plaintiff testified that since 2018, his arthritis had worsened, and he gained over ninety pounds, which contributed to Dr. Pierson's decision to schedule him for a right knee replacement on the 28th, unfortunately however, the doctor suddenly died (Tr. at 36-37, 38). The fact that Dr. Morrison had also just recently opined that the Plaintiff must use a cane, save for very short distances, further demonstrated a worsening of his osteoarthritis impairment. All these factors taken together belie the ALJ's finding that the Plaintiff's cane use was not a medical necessity – this is material evidence that the ALJ's decision fails to adequately address and runs afoul of Fourth Circuit jurisprudence. See, e.g., Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83 (4th Cir. 2020). In other words, this particular finding is not supported by substantial evidence.

To that extent, the undersigned does not agree with the Commissioner that the ALJ properly evaluated Dr. Morrison's opinion as it concerned the Plaintiff's cane use – because this component of the opinion was not explicitly discussed, and appears contrary to the ALJ's finding there was no medical necessity of using a cane in this case. Moreover, because this critical evidence was ostensibly glossed over, the undersigned likewise cannot find that substantial evidence supports the light RFC assessment – the conflict between the Plaintiff's treating doctor's opinion and the ALJ's finding concerning the Plaintiff's cane use, and the absence of adequate explanation why Dr. Morrison's opinion regarding the Plaintiff's cane use was discounted, the undersigned finds that the light RFC assessment is not supported by substantial evidence. However, to the extent the Plaintiff contends the ALJ should have adopted his treating source's findings that he was essentially disabled, the Regulations expressly provide that the Commissioner is the final arbiter on such issues, and is under no obligation to give any special significance to the source for issues reserved to the Commissioner. See 20 C.F.R. § 416.927(d)(2), (d)(3).

Accordingly, the undersigned **FINDS** that the RFC assessment and the subsequent findings in step five of the sequential evaluation are not supported by substantial evidence because of the misstep that occurred in the prior step(s) as explained *supra*.

The Evaluation of Symptoms in Disability Claims:

While the undersigned has already noted, *supra*, that the RFC determination is the most a claimant can do despite his restrictions or limitations, and is an administrative assessment made by the adjudicator based on all the relevant evidence in the record. See SSR 96-8p, 1996 WL 3744184, at *1; 20 C.F.R. § 416.945(a). It is just as important that this assessment includes evidence related to a claimant's subjective complaints. Id. § 416.929. This Section requires an

adjudicator to make a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

SSR 16-3p further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on the consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 416.929(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by

your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms.
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 416.929(c)(3).

The undersigned notes that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D. S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., No. 09–417, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id.

Recently, the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d at 98 (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law

in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting the Plaintiff's complaints.

Pertinent to this case, the ALJ acknowledged the Plaintiff's testimony, noting his cane use and the worsening of his right knee condition to the point necessitating replacement surgery. However, the undersigned finds that the ALJ did not adequately consider the Plaintiff's ongoing treatment, outside of his medication, to relieve his pain and symptoms as they related to his knee condition, in contravention to 20 C.F.R. § 416.929(c)(4)(v) – in short, the Plaintiff's deterioration of his right knee and impending total knee surgery, coupled with his treating physician's opinion that he required a cane to ambulate were not properly considered. In Hines v. Barnhart, the Fourth Circuit stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d 559 at 565 n.3 (4th Cir. 2006) (citing <u>Craig v. Chater</u>, 76 F.3d 585, 595 (4th Cir. 1995)).

As noted by the Plaintiff, the ALJ did expressly find that his statements about the intensity, persistence, and limiting effects of his symptoms were "inconsistent" with the "objective findings and treatment records" (Tr. at 18). This finding, in addition to the failure to account for Dr. Morrison's opinion regarding the Plaintiff's need for an assistive device, and the omission of the State Agency psychological consultants' opinion that he also be restricted to "superficial" yet occasional contact with coworkers, supervisors and the general public, the undersigned finds that the ALJ selected portions from the objective medical evidence that failed to support the Plaintiff's allegations of disabling impairments. <u>Arakas</u>, 983 F.3d at 98. To that extent, the undersigned **FINDS** that the ALJ's subjective symptoms analysis did not comply with the pertinent Regulations and controlling case law, resulting in an inappropriate RFC assessment, therefore, the ALJ's conclusions on these issues are not based upon substantial evidence.

The undersigned further **FINDS** that the final decision denying the Plaintiff's application for supplemental security income is not supported by the substantial evidence.

## **Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's request for remand (ECF No. 14), **DENY** the Commissioner's request to affirm the decision below (ECF No. 17), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings in order for the ALJ to properly consider and evaluate the State Agency psychological consultants' opinions to completely assess the Plaintiff's

non-exertional limitations as they relate to his ability to perform other jobs in the national economy, as well as to evaluate Dr. Morrison's opinion that the Plaintiff must use a cane at all times except for very short ranges pursuant to SSR 96-9p.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: May 12, 2023.



Omar J. Aboulhosn
United States Magistrate Judge